## Pittsburg *versus* Cluley.

1. Acts of 1857 and 1864 provided for paving, &c., the streets, &c., in Pittsburg. The Act of 1857 provided a lien against lot-holders for setting curbstones and paving the sidewalks. The Act of 1864 authorized the city to pave the streets and set them with curbstones and to charge the cost to the lot-holders, and declared that paving and repaving sidewalks and curbstones are within the Act of 1857. A claim was filed for "grading, paving and setting with curbstones within six months past that part of Centre avenue," &c., in pursuance of the Act of 1864. *Held*, that the claim was sufficient although it did not specify whether the work was to the sidewalks or the cartway.

2. The Act of 1864 directs the regulator to make assessment of the expense, give notice by publication where the assessment may be seen and parties have an opportunity of having mistakes corrected, and after correction, the regulator shall give the assessment to the treasurer, who shall notify the parties charged, and if not paid in thirty days the city solicitor shall file a lien, in the same manner as mechanics' liens, &c. It is not necessary that the solicitor should state all the particulars as in a·mechanics' lien.

3. The Mechanics' Lien Law furnishes only a general not a specific rule of proceeding under these acts.

November 8th 1870.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* Of October and November Term 1870.

This was a scire facias to April Term 1869, upon a lien for a municipal claim by the City of Pittsburg against John F. Cluley.

The city councils on the 10th of March 1868, passed an ordinance for paving Centre Avenue between Dinwiddie and Kirkpatrick streets, by virtue of which the claim was filed April 15th 1869, and is as follows:—

"The City of Pittsburg file this claim for the sum of $440.20, with interest thereon from November 6th 1868, and five per cent. additional, as attorney's fee for collection, against all that certain lot of ground in the ———— Ward of the city of Pittsburg, situate on the north side of Centre avenue, fronting on said avenue sixty feet, &c., * * * of which the said John F. Cluley is owner or reputed owner.

"The said sum of $440.20, being the assessment upon said lot for the cost and expense of grading, paving and setting with curbstones, within six months last past, that part of Centre avenue extending from Dinwiddie street to Kirkpatrick street; the said work having been done in pursuance of an Act of Assembly, approved January 6th 1864, and an ordinance of the Select and Common Councils of said city, passed March 10th, A. D. 1868, and this claim is now filed as a lien against said lot in accordance with the Acts of Assembly in such case made and provided."

There are two Acts of Assembly relating to municipal improvements in Pittsburg:—

16 P. F. SMITH—29

[Pittsburg *v.* Cluley.]

The Act of the 18th of April 1857 (Pamph. L. 240), which provides that the councils may on the failure of the owner of lots fronting on any street, lane or alley, after twenty days' notice in writing, caused to be prepared and set with hewn curbstone of good and sufficient quality in front of his, her or their lot, at such grade and place as shall be directed by the city regulator, and that said councils shall have the like power to pave the sidewalks fronting on any street, lane or alley. It further provides that the cost of said work and materials shall remain a lien from the completion of the work, and that for the expense a lien shall be filed in the District Court, which when filed shall continue for five years, with particular directions how process shall issue for the collection of said lien.

The Act of January 4th 1864 (Pamph. L. 1131), which enacts:

Sect. 6. The said councils are hereby authorized, whenever they may deem the same necessary, to cause to be graded, regraded, paved, repaved or macadamized, any public street, &c., or any part thereof, which is now or which may hereafter be laid out and opened in said city, &c., and to have the same set with curbstone; and to levy and collect the cost and expense of the same from the owners of property bounding or abutting on the portions of said streets, &c., thus improved, by an assessment of an equal sum per foot front of said properties.

Sect. 7. Whenever any street, &c., has been graded, &c., in pursuance of the preceding section, it shall be the duty of the recording regulator of said city to make the assessment for the cost and expense thereof, as provided for in said section, and to give notice by publication for ten days in two daily papers of said city that the said assessment has been made and may be seen at his office, and that the parties interested may have an opportunity of having any errors or mistakes corrected; after correcting any errors or mistakes that may have been discovered, he shall immediately hand over the said assessments with a plan and description of each lot, the amount assessed thereon, and the name of the owner or owners to the treasurer of said city.

Sect. 8. As soon as the treasurer shall have received the said assessment-list from the recording regulator, he shall cause notice of the amount assessed upon each property to be given to the owner thereof, and that, if the same be not paid to him within thirty days from the time of said notice, it will be filed as a lien against said property with interest, costs and fees.

Sect. 9. If said assessments are not paid within thirty days after the service of notice aforesaid, the treasurer shall hand over to the city solicitor the said assessment-list, with the plan and description of each lot, &c., as furnished by the recording regulator, and the city solicitor shall file a lien against each property for the amount of the assessment thereon remaining unpaid,

[Pittsburg v. Cluley.]

with interest from the time notice for payment was given, and five per centum additional as the solicitor's fee for collection.

Sect. 18. The lien authorized by this act shall be filed in the District Court of said county, in the same manner as mechanics' liens are filed, and writs of scire facias and levari facias may be issued thereon, as in case of mechanics' liens, and the same costs shall be taxed; but when the same owner has two or more vacant lots adjoining each other on the same street, &c., all of said lots shall be embraced in one lien, &c. * * *

Sect. 19. The assessments authorized by this act shall be liens upon the properties assessed, from the commencement of the improvements for which they were made, and shall, if filed within six months after the completion of said improvements, continue liens for five years, and be revived by scire facias as other liens, &c.

The 25th section provides that liens for setting curbstones and paving sidewalks under the Act of 1857 shall be indexed as provided in this act, and that repairing sidewalks and curbstones and repaving are within the provisions of this act.

On the 2d of June 1870, the case was tried before Kirkpatrick, J.

H. J. Moore, city engineer of Pittsburg in 1868–9, testified, "Under my direction Centre avenue was graded, paved and curbed from Dinwiddie to Kirkpatrick street, made an assessment on entire front paved for the work. It was done in my office, under my direction; amount assessed to defendant was $440.20. The work was completed on or about the 1st day of November 1868."

The defendant moved for a nonsuit, alleging that the lien was fatally defective.

1. It did not show that the expense is charged for paving the sidewalk.

2. The expense of curbing is included in the lien with the expense of paving.

3. The lien does not give the date of doing the work.

The court ordered a nonsuit, which the court in banc refused to take off.

This was assigned for error by the plaintiff on the removal of the case to the Supreme Court.

J. F. Slagle, for plaintiff in error, referred to the Acts of Assembly. The date when the work was performed is sufficiently shown: Lybrandt v. Eberley, 12 Casey 347; McCay's Appeal, 1 Wright 125; Hahn's Appeal, 3 Id. 413.

D. Reed, for defendant in error, referred to the same acts. The date was not sufficiently stated, the same rules apply to municipal liens as to mechanics' liens: Philadelphia v. Suter, 6 Casey 55; Russell v. Bell, 8 Wright 48.

The opinion of the court was delivered, November 14th 1870, by AGNEW, J.—This was a lien filed under the Act of 6th January 1864 by the city of Pittsburg against the defendant's lot, for grading, paving and setting with curbstone a part of Centre avenue. The court below nonsuited the plaintiff, on the ground that the claim filed was fatally defective, and this is the only question. The first defect, alleging that the claim does not show whether the paving was for the sidewalk or for the cartway, is unfounded. It is true that there are two acts in force for paving, that of the 18th April 1857 for paving and curbing the sidewalks of the city, and the Act of 6th January 1864 for grading, paving and setting the streets with curbstones; and that the 25th section of the latter recognises the former act as in force. But the claim is neither indefinite nor uncertain in this respect; for it expressly claims the cost and expense of grading, paving and setting Centre avenue with curbstones, and adds the said work having been done in pursuance of the Act of Assembly, approved January 6th 1864, and an ordinance of the Select and Common Councils of said city, passed March 10th 1868. It is evident, therefore, it is not a claim for paving sidewalks under the Act of 1857, but for grading, paving and setting with curb under the Act of 1864. The second defect alleged is also unfounded. Curbing is expressly provided for in the 6th section of the Act of 1864; and is just as necessary to protect the street pavement as it is the sidewalk, and to prevent the cobble-stones or other paving materials from being displaced by the wheels of wagons and the feet of horses, as well as to form gutters to carry off the water. The third defect alleged, as to the want of the date of doing the work, on examination of the Act of 1864, will be found to be unsubstantial. A short review of its provisions will show this. The 6th section provides that the councils shall levy and collect the cost and expense of the *same* (to wit, of grading, paving and curbing) from the owners of property bounding on the street thus improved, "by an *assessment* of an *equal sum per foot front* of said property." Now it is evident this equal sum per foot front can be ascertained only by dividing the sum total of the cost by the total feet frontage, and it must result in a specific sum per foot. It is the amount of this foot frontage which is assessed against each lot. The 7th section provides that the recording regulator of the city shall make this "*assessment,*" and give notice to the owners for the correction of errors and mistakes in it, and then directs that "after correcting any errors or mistakes that may be discovered, he shall immediately hand over the *said assessments* with a plan and description of each lot, the *amount assessed thereon* and the name of the owner or owners, to the treasurer of the city." Then the 8th section provides that "as soon as the treasurer shall have received the *said assessment list* from the recording regulator, he shall cause notice of the

*amount assessed upon each property* to be given to the owner thereof, and that if the same shall not be paid to him within thirty days from the time of said notice *it* (to wit, the amount assessed) will be filed as a lien against said property with interest, cost and fees." Thus far it will be observed that the act provides for nothing but the assessment of the amount each lot-holder is to pay, and this is the result of a calculation of an equal sum per foot of the total cost of the work.

This brings us directly to the part to be performed by the city solicitor. The 9th section provides, "that if *said assessments* are not paid within thirty days after the service of notice aforesaid, the treasurer shall *hand over* to the city solicitor *the said assessment list*, with the plan and description of each lot, &c., *as furnished by the recording regulator;* and the city solicitor shall file a lien against each property for the *amount of the assessment* thereon remaining unpaid, with *interest* from the time notice for payment was given, and five *per centum* additional as the solicitor's fee for collection." Thus we have given by the act itself the very material of the claim, which the law furnishes to the city solicitor as the lien to be filed. He has nothing else from which to construct the lien. Nor does the lot-owner need anything more. What has he to do with the contracts for the work, or the several amounts of paving, grading, and curbing? All this is to be attended to by persons acting officially as his representatives in the city government. What he wants to know is the amount of his assessment, and in making this up the law affords him an opportunity *to correct errors and mistakes.* When the assessment list goes into the treasurer's hands he has only to make payment. If he fails to pay, it is for the amount of the assessment the lien is given, and it would be impossible from the materials furnished to the city solicitor to make out a statement of the cost of the work and all the particulars required by the Mechanic's Lien Law for the benefit of an owner of property who puts up a building at his own expense. When, therefore, we come to the 18th section, which says: "That the lien authorized by this act shall be filed in the District Court of said county in the same manner as mechanics' liens are filed, and writs of scire facias and levari facias may be issued thereon as in the case of mechanics' liens, and the same costs be taxed," it is manifest the Mechanics' Lien Act furnishes only a general, and not a specific analogy and rule of proceeding. This is evident by an examination of the provisions of the 12th section of the Mechanics' Lien Law of 1836. The city solicitor may set forth the names of the party claimant and of the owner; but how can he set forth the street contractors or builders? and yet we know nearly all paving and grading are done by contract; and what interest has the contractor in the claim against the lot-owner, or what reason is there

[Pittsburg *v*. Cluley.]

to make him a party ?   The solicitor may also set forth generally
that the claim is for grading, paving and curbing; but how can he
set forth, or what use is there that he should, the several amounts
and kinds of materials, and the several cost of grading, paving
and curbing, or the time when the materials were furnished or the
work done ?   He has no materials furnished from which to con-
struct such a claim, the act giving him only " the assessment list,
with the plan and description of each lot, the amount assessed
thereon and the name of the owner or owners."   How is he to
ascertain from this all the  particulars required to be set forth in
the case of the individual owner for whom work is done or mate-
rials furnished and who is the debtor with whom the account itself
is to be settled ?   It is evident the Mechanics' Lien Act does not fit
such a case in many respects, and is therefore to be followed only
when the analogy is perfect.   Besides, there is a question as to
what act must be followed.   There are two laws, the Act of 1836
and the Act of 16th April 1845, in regard to which this court has
held that different rules prevail respecting the time to be set forth
in the claim filed.   Under the latter act, which provides for claims
filed under *contracts* for building, it has been held that the time
is sufficiently set forth when it is stated the work was done
" *within six months last past*" : McCay's Appeal, 1 Wright 125 ;
Hahn's Appeal, 3 Id. 413.   Now this is the very language of the
claim in this instance, and the claim here also sets forth that the
interest runs on the amount assessed from the 6th of November
1868, which is less than six months from the date of filing.   This
is, therefore, a sufficient statement of time under the provisions
of the Act of 1864, and proof having been made that the work
was actually finished on or about the 1st of November 1868, the
filing of the lien was clearly within time.   The court, therefore,
erred in ordering the plaintiff to be nonsuited.

Judgment reversed, and a *venire facias de novo* awarded.